IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARIAH DANIELS,<br><br>                    Petitioner,<br><br>            vs.<br><br>M. D. BITER, Warden, Kern Valley State Prison,<br><br>                    Respondent. | No. 2:11-cv-00282-JKS<br><br>MEMORANDUM DECISION |

Zachariah Daniels, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  Daniels is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Kern Valley State Prison.  Respondent has answered, and Daniels has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

While confined at the California State Prison, Solano ("CSP-Solano"),[1] Daniels was charged in a Rules Violation Report ("RVR") with Battery on Inmate with Use of a Weapon.  In November 2008, after a disciplinary hearing before a Senior Hearing Officer ("SHO"), Daniels was found guilty of Battery on Inmate with Use of a Weapon, a Division A-1 offense.  The SHO assessed a loss of 360 days of behavioral credit and referred the matter for program and custody

---

[1] The record before this Court does not show the reason for, or duration of, Daniel's confinement.  Daniels does not challenge his conviction or sentence, or that he is in the lawful custody of the Department of Corrections and Rehabilitation.  Because the legality of Daniels' custody is not challenged, the Court finds that it is unnecessary to augment the record to provide that information.

review, SHO term assessment, transfer consideration, and privilege group reduction action.

After exhausting his administrative remedies,[2] Daniels timely filed a petition for habeas relief in the Solano County Superior Court, which denied Daniels relief in an unreported, reasoned decision. Daniels' subsequent petition for habeas relief in the California Court of Appeal, First Appellate District, was summarily denied without opinion or citation to authority. The California Supreme Court also summarily denied Daniels' petition without opinion or citation to authority on November 17, 2010. Daniels timely filed his Petition for relief in this Court on January 25, 2011.

>   The RVR charged:
>
>   On 8/25/08, at approximately 0900 hours an Investigation was concluded concerning the stabbing assault of I/M CLAR, F-56799, by I/M O'NEAL, F-64041, that occurred on 6/19/08 at approx. 1000 hours in H-Dorm on Facility II (Refer to incident report #CSP-SF2-08-06-0191).
>   During the Investigation, first hand confidential information was received that identified Inmate Daniels, P-49740, as threatening to have I/M O'NEAL, F64041, assaulted if he didn't stab a white inmate on Facility II. The threat against O'NEAL occurred on June 19, 2008 at approx. 0900 hours adjacent to Housing Unit 9.[3]
>
>   The decision of the SHO was based upon the following:
>
>   A. The CDCR 115 of August 25, 2008, wherein Correctional Lieutenant M. Melgoza states in part, "During the investigation, first hand confidential information was received that identified Inmate Daniels, P-49740 as threatening to have I/M O'neal [sic], F-64041, assaulted if he didn't stab a white inmate on Facility If." The SHO believes this to be evidence that Inmate Daniels threatened to have Inmate O'neal assaulted if he did not stab another inmate. The SHO believes that this prior knowledge or planning of the subsequent assault directly involved Inmate Daniels as a principle participant of the event.

---

[2] Prisoner disciplinary actions are subject to internal administrative review at both the institutional and departmental levels. Cal. Code Regs., tit. 15, §§ 3084.1, 3084.2, 3084.7, 3084.9.

[3] Docket No. 1 at 37.

B. The confidential memorandum dated August 25, 2008 and authored by Correctional Lieutenant M. Melgoza indicates that on June 19, 2008 at approximately 0900 hours, while adjacent to housing unit 9, Inmate Daniels P-497 40, threatened to have Inmate O'neal F-64041, assaulted if he did not stab a white inmate on Facility II. The SHO believes that this confidential memorandum is evidence that Inmate Daniels was a direct participant in the Battery on Inmate Clark, F-56799, in that he had prior knowledge of the event and threatened inmate O'neal in order to get him to carry out the assault. The SHO has reviewed the confidential memorandum involved in this disciplinary and found that it does meet the criteria established m CCR §3321 (c)(4) for reliability[.]   Part of the information that was provided by the confidential source was proven to be true during the investigation of the incident
C. The CDCR 837 incident report SF2-08-06-0191 dated June 19, 2008 and issued to Inmate Daniels on August 26, 2008, indicates that Inmate Clark was battered with a weapon by Inmate O'neal[.]   The 837 C's authored by Correctional Officers A. Lamb, F[.] Miata and B. Yoro all state that Inmate O'neal was observed attacking Inmate Clark. The SHO believes this to be evidence that Inmate O'neal assaulted Inmate Clark as a direct result of the threat he received from Inmate Daniels.
D. The CDCR 7219 Report of Injury or Unusual Occurrence shows that Inmate Clark sustained injuries consistent with that of being battered with a weapon. These injuries consisted of two puncture wounds to the upper back. The SHO believes this to be evidence that Inmate O'neal battered Inmate Clark with a weapon as a direct result of being threatened by Inmate Daniels.[4]

## II. GROUNDS PRESENTED/DEFENSES

In his Petition, Daniels raises two grounds: (1) that the denial of the right to call a witness violated his Sixth Amendment right; and (2) he was denied the right to view video tape evidence in violation of due process. Respondent does not raise any affirmative defense. Daniels appended to his Petition a paper entitled "Petition for Writ of Habeas Corpus and Memorandum of Points and Authorities."[5] This paper appears to be a photocopy of the memorandum he submitted in the state-court proceedings, with two handwritten pages inserted between page 17 and 18, and one handwritten page inserted between page 19 and 20. In that

---

[4] Docket No. 1 at 39.

[5] Docket No. 1 at 51-73.

paper Daniels addresses issues not raised as a ground in his Petition, *e.g.*, use of the confidential informant and sufficiency of the evidence. The Court declines to address issues not raised in, or directly related to, the two grounds raised in the Petition.[6]

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[7]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[8]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[9]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[10]  When a claim falls under the

---

[6] The Court notes, however, that even if it did, it would not grant relief.  *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454-56 (1985).

[7] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[8] *Williams*, 529 U.S. at 412 (alteration added).

[9] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[10] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-*
(continued...)

"unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[11]  The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[12]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[13]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[14]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[15]

---

[10](...continued)
*Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[11] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[12] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

[13] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[14] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[15] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[16]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[17] State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[18] This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[19]

---

[16] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[17] *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . .").

[18] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[19] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition
(continued...)

Under California's unique habeas procedure, a prisoner who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal. If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[20] This is considered as the functional equivalent of the appeal process.[21] Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[22] This presumption applies to state-trial courts and appellate courts alike.[23]

To the extent that Daniels raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.[24] It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal

---

[19](...continued)
was not entitled to § 2254(d) deference).

[20] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

[21] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

[22] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[23] *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("Stevenson does not address these factual findings, let alone challenge them with clear and convincing evidence. Accordingly, we presume them to be correct." (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002))).

[24] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).

law.[25]  "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[26]  A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[27]  It does not matter that the state supreme court's statement of the law was dictum if it is perfectly clear and unambiguous.[28]

A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[29]  This is especially true where the highest court in the state has denied review of the lower court's decision.[30]

---

[25] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[26] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[27] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[28] *Id.* at 76.

[29] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[30] *Id.*; *see West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (same).

A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[31]  "[The Supreme Court has] long recognized that a mere error of state law is not a denial of due process."[32]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[33]  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[34]  Thus, to the extent that Daniels' arguments rest upon an alleged violation of state law, statutory or regulatory, this Court declines to reach those arguments.

## IV. DISCUSSION

Prison disciplinary proceedings are not part of a criminal prosecution; therefore, the full panoply of rights due to a defendant in such a proceeding does not apply.[35]  In the context of prison disciplinary proceedings, the minimum requirements of due process are: (1) advance written notice of the charges brought against the inmate; (2) the right to call witnesses and present documentary evidence in his defense; (3) a written statement of the factfinder of the

---

[31] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[32] *Cooke*, 131 S. Ct. at 863 (internal quotation marks and citations omitted).

[33] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[34] *Smith v. Philips*, 455 U.S. 209, 221 (1982) (citations omitted); *see also Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) ("It is beyond dispute that we do not hold a supervisory power over the courts of the several States." (quoting *Dickerson v. United States*, 530 U.S. 428, 438 (2000))).

[35] *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

evidence relied on and the reasons for the disciplinary action taken,[36] and (4) the findings must be supported by some evidence in the record.[37] Inmates do not, however, have a right of confrontation and cross-examination.[38]

The applicable constitutional standard by which federal habeas courts are bound in reviewing state prisoner disciplinary findings is whether "there is *any* evidence in the record that could support the conclusion reached by the disciplinary board."[39] This standard does not require that the court independently assess the credibility of the witnesses or re-weigh the evidence.[40] Because a prison disciplinary proceeding "is not comparable to a criminal conviction, . . . neither the amount of evidence necessary to support such a conviction . . . nor any other standard greater than some evidence applies in this context."[41]

Even if the state did not follow the state's own procedure, that does not violate due process, as long as the prisoner is afforded process sufficient to meet the standard in *Wolff*.[42] Before disciplinary action resulting in the loss of good time may be taken, due process requires the prisoner be given: (1) written notice of the violation at least 24 hours in advance of appearance before the disciplinary hearing; (2) a written statement of fact finder as to evidence relied on and reason for disciplinary action taken, except that certain items of evidence may be

---

[36] *Id.* at 563-66.

[37] *Hill*, 472 U.S. at 454.

[38] *Wolff*, 418 U.S. at 567-68.

[39] *Hill*, 472 U.S. at 455-56 (emphasis added).

[40] *Id.* at 455.

[41] *Id.* at 456 (citations omitted).

[42] *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994), *abrogated on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995).

excluded when personal or institutional safety would be implicated; and (3) the opportunity to call witnesses and present documentary evidence in defense when permitting the inmate to do so would not be unduly hazardous to institutional safety or correctional goals.[43]

Ground 1:  Violation of the Sixth Amendment

Daniels requested that J. O'Neal, the inmate whom Daniels allegedly threatened, be called as a witness.  The SHO denied this request:

> Request for Witnesses:  Inmate Daniels requested to have Inmate O'neal, F-64041, present at the hearing as a witness.  According to the CDC 115 being heard, Inmate Daniels is alleged to have threatened Inmate O'neal.  If this information is correct, presenting Inmate O'neal as a witness could create a situation in which Inmate Daniels would have the opportunity to expound on his alleged threat.  Furthermore, the SHO does not believe that Inmate O'neal would be able to provide any information that would vital to the hearing process.  It is the opinion of the SHO that Inmate Daniels could not provide a demonstrable reason Inmate O'neal would aid in his defense.  The SHO denied the request for Inmate O'neal to appear as a witness.[44]

Daniels contends that he was found guilty without the opportunity to present favorable evidence due to the fact that the Investigative Employee assigned failed to contact the witness on Daniels' behalf, a violation of due process; alternatively Daniels contends that he was denied his right of confrontation.  In his Memorandum of Points and Authorities, Daniels identifies the witness as being one J. O'Neal, the inmate Daniels allegedly threatened.  In rejecting Daniels' claim, the Solano County Superior Court held:

> The decision of the hearing officer is supported by some evidence in the record. (*Superintendent v. Hill* (1985) 472 U.S. 445, 447; *ln re Zepeda* (2006) 141 Cal.App.4th 1493, 1497.)  In this case, a confidential informant revealed [Daniels] as being responsible for inmate O'Neil's attack of inmate Clark.  The confidential source's reliability was established because part of the information provided by the

---

[43] *Wolff*, 418 U.S. at 563-66.

[44] Docket No. 1 at 38.

> source was proven to be true during the investigation of the incident. (Cal. Code Regs., tit. 15, § 13 3321(c)(4).) The senior hearing officer found the information to be sufficiently reliable. This is some evidence to support the finding of guilt. (*Hill,* 472 U.S. at p. 447; Zepeda, 141 Cal.App.4th at p. 1497.) In reviewing disciplinary decisions, courts do not examine the entire record, evaluate the credibility of witnesses, or reweigh the evidence. (*Hill*, 472 U.S. at p. 455.)
>
> [Daniels] was properly charged with battery, not "conspiracy" to batter. California Code of Regulations § 3005 states that an inmate shall not threaten another with the use of force or violence, or urge another to use force or violence. (Cal. Code Regs., tit 15, § 3005(d).) The regulations clearly provide that an instigator of violence may be found guilty of the act of violence.
>
> In terms of procedural due process, no law or regulation gives an inmate the right to question a confidential source, or any other witness, in camera. An inmate at a disciplinary hearing is not entitled to the full panoply of rights due to a criminal defendant. (*Wolff v. McDonnell* (1974) 418 U.S. 539, 566; *In re Davis* (1979) 25 Cal.3d 384, 391.)
>
> With regard to [Daniels'] claim that he was improperly denied the opportunity to call inmate O'Neil as a witness, the record shows that the senior hearing officer determined that allowing O'Neil to appear as a witness might endanger his safety. (Cal. Code Regs., tit. 15, § 3315(e)(1)(A).) The hearing officer also decided that O'Neil would not be able to provide any information vital to the hearing. (*Id* at § 3315(e)(1)(B).) The denial of inmate O'Neil as a witness was thus justified.
>
> As to [Daniels'] claim that he was denied the opportunity to present other witnesses, [Daniels] has not shown prejudice. (*Chapman v. Califomia* (1967) 386 U.S. n 18, 24; *People v. Roldan* (2005) 35 Cal. 4th 646, 735.) He does not state with specificity who he would call or show that further testimony could negate the confidential source's information that [Daniels] was involved. As such, [Daniels] has not shown that the denial of his requested witnesses changed the outcome of the hearing.
> . . . .
> Finally, [Daniels'] claim that his investigative employee was deficient lacks merit. [Daniels'] qualm with his investigative employee's performance rests on the investigative employee's failure to procure inmate O'Neil as a witness (or other witnesses). As shown above, however, [Daniels] had no right to call a witness if it would threaten witness safety or if the witness had nothing pertinent to add.[45]

The Supreme Court has made clear that the right of a prisoner to call, confront, or cross-examine witnesses in disciplinary proceeding is not co-extensive with that of the right of a

---

[45] Docket No. 1 at 29-30. The omitted material is quoted below in connection with Daniels' second ground.

12

criminal defendant in a criminal trial; indeed, it is severely circumscribed.[46] Nor has the Supreme Court held that a prisoner has the right to compel the attendance of witnesses.[47] Here, the SHO gave non-pre-textual reasons for denying Daniels' request to call O'Neal as a witness, and the Solano County Superior Court found those reasons to be sufficient. Clearly established Supreme Court law in the context of the right to call witnesses is sparse. *Wolff* and its progeny provide a general standard that gives state courts wide latitude for reasonable decision making under AEDPA.[48] That latitude is greater still in cases, such as this, where no decision of the Supreme Court has ever explained how the general rule applies.[49] Daniels did not make an offer of proof as to what O'Neal's testimony would be or how it would be helpful to his defense or claim that O'Neal was willing to testify on his behalf. Although prisoners have a constitutional right to "present" witnesses under *Wolff*, they have no right of confrontation or cross-examination.

In this case, it does not appear that Daniels sought to present O'Neal as a favorable defense witness, but rather, as means of confronting O'Neal and essentially cross-examining him, neither of which he has a constitutional right to do. Given the lack of Supreme Court holdings

---

[46] *Wolff*, 418 U.S. at 566-68; *see Ponte v. Real*, 471 U.S. 491, 497-99 (1985) (applying *Wolff*); *Baxter v. Palmigiano*, 425 U.S. 308, 320-23 (1976) (same).

[47] *Cf. Cleavinger v. Saxner*, 474 U.S. 193, 206 (1985) (noting in a prisoner civil rights case that, under the prison regulations, a prisoner had no right to compel the attendance of witnesses).

[48] *See Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004) ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

[49] *See, e.g., Wong v. Smith*, 131 S. Ct. 10, 12 (2010) (Mem) (addressing the general rule against coercive jury instructions).

supporting Daniels on this issue,[50] this Court cannot find that the decision of the Solano County Superior Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[51]  Daniels is not entitled to relief under his first ground.

<u>Ground: 2:  Denial of Right to Present Favorable Video Footage</u>

Daniels contends that he was denied the right to present video footage he contends was favorable to his defense.  At the hearing, the SHO noted that "Videotape and photo evidence were not applicable for this hearing."[52]  Daniels raised the issue of the failure to allow him to review the videotape in his administrative appeal.  As stated in the Director's Level Decision, the Second Level Decision determined, as relevant to the videotape issue:  "There is no video footage to review and there was no reference by the staff to a reference video and no video evidence was used against that appellant in the disciplinary process."[53]  The Director's Level Decision itself did not directly address the question.

In denying Daniels relief on this ground, the Solano County Superior Court held:

> In terms of [Daniels'] request for video and photo footage, the rules violation report states that no video or photo footage was relied on.  Thus, [Daniels] cannot

---

[50] *Musladin*, 549 U.S. at 77; *see Van Patten*, 552 U.S. at 127.

[51] 28 U.S.C. § 2254(d).

[52] Docket No. 1 at 39.

[53] Docket No. 1 at 25.  The Second Level Decision itself is not included in the record before this Court.

show that he was prejudiced in not receiving evidence that was not used. (Chapman, 386 U.S. at p. 24; *Roldan,* 35 Cal.4th at p. 735.)[54]

In the informal response to Daniels' petition for habeas relief in the California Court of Appeal, the California Attorney General noted that "the rules violation report does not reflect that Daniels requested any sort of video or photographs as evidence at this hearing."[55] This Court's review of the record of the RVR proceedings does not reveal that at any point during the disciplinary proceedings before the SHO did Daniels request he be permitted to view a videotape, or that a videotape be received into evidence. The report of the Investigative Employee's interview of Daniels, however, indicates that Daniels said: "I want the confidential informant as a witness. Other witnesses I want are all the inmates involved. Mainly O'Neal since the threat was against him, and the yard camera."[56]

Daniels contends that CSP-Solano has numerous surveillance cameras throughout the prison, both inside and out. Daniels further contends that, because videotape footage could have captured his presence roaming in the area where he supposedly met with O'Neal and the videotape would disprove the allegation that he met with O'Neal at the time and place alleged. Unfortunately for Daniels, his argument fails on at least two bases. First, while if he was in any videotape of the yard at the relevant time would prove Daniels presence, his absence from any video coverage of the yard, although evidence in Daniels' favor, does not necessarily prove he was not where he was alleged to be at the time alleged. The SHO could have given that fact little weight in accepting the contrary evidence of guilt.

---

[54] Docket No. 1 at 30.

[55] Docket No. 1 at 33.

[56] Docket No. 1 at 40.

Second, there is no evidence that such a videotape covering the area existed. There is no evidence that the entire yard, in particular the area where the conversation between Daniels and O'Neal allegedly occurred, was covered by a surveillance camera. While this Court agrees that the fact that the actual assault by O'Neal was captured on videotape as the record indicates raises a suspicion that the videotape Daniels sought possibly, even perhaps probably, existed, that is insufficient. The burden is on a habeas petitioner to prove by a preponderance of the evidence entitlement to relief; mere speculation, supposition or conjecture does not suffice.[57]

## V. CONCLUSION AND ORDER

Daniels is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[58] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[59]

The Clerk of the Court is to enter judgment accordingly.

Dated: September 18, 2012.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[57] *Silva*, 279 F.3d at 835; *see Bartholomew*, 516 U.S. at 8 (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[58] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).

[59] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.